1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8    VINCENT W. M.,

9                          Plaintiff,

10        v.

11   COMMISSIONER OF SOCIAL SECURITY,

12                          Defendant.

CASE NO. C23-5549-BAT

**ORDER REVERSING THE
COMMISSIONER'S DECISION**

13        Plaintiff appeals the ALJ's denial of his application for Supplemental Security Income

14   ("SSI").  He contends the ALJ misevaluated the medical opinion evidence, his testimony, lay

15   witness testimony, his residual functional capacity ("RFC"), and that the resulting step five

16   findings are therefore erroneous.  Dkt. 12 at 1.  For the reasons below, the Court **REVERSES**

17   the Commissioner's final decision and **REMANDS** the matter for further administrative

18   proceedings under sentence four of 42 U.S.C. § 405(g).

19                                    **BACKGROUND**

20        Plaintiff is currently twenty-six years-old, has a high school education, and no past

21   relevant work.  Tr. 29.  Plaintiff had an individualized education plan ("IEP") and received

22

23

special education services throughout elementary school and high school based on an emotional,

behavioral, and communication disorder.[1]  Tr. 280-323.

On April 2, 2019, Plaintiff applied for benefits, alleging disability beginning January 1,

2005.[2]  Tr. 201-06, 16.  His application was denied initially and on reconsideration.  Tr. 53-66,

67-82.  The ALJ conducted a hearing on April 4, 2022, and on May 10, 2022, issued a decision

finding Plaintiff not disabled.  Tr. 37-52, 16-31.  As the Appeals Council denied Plaintiff's

request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-6.

**DISCUSSION**

**A.      Medical Opinion Evidence**[3]

---

[1] Plaintiff was "mainstreamed" beginning his sophomore year of high school but nevertheless continued to receive special education instruction and additional accommodations and assistance. *See* Tr. 281, 284, 287, 298.

[2] Supplemental security income benefits are not retroactive to the disability onset date but are payable one month following the month in which the application was filed.  *See* 20 C.F.R. § 416.335. Accordingly, the relevant period in this case was May 2019, one month after Plaintiff filed his April 2019 application, through May 2022, the date of the ALJ's decision.

[3] The Court notes in addition to the below challenged opinions, Plaintiff also argues generally the ALJ failed to properly evaluate "other medical evidence," and this failure constituted error because the medical evidence supported the challenged medical opinions.  *See* Dkt. 12 at 5-8. Plaintiff, however, simply summarizes various medical findings and fails to develop a coherent argument or specify which medical evidence he contends supports a particular challenged medical opinion. As Plaintiff challenges the ALJ's treatment of multiple medical opinions, Plaintiff's summary falls short of appellate review requirements.  *See Putz v. Kijakazi*, 2022 WL 6943095 (9th Cir. Oct. 12, 2022) (citing *Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007)). The Court will not "manufacture arguments where none is presented." *Indep. Towers of Wash. v. Washington,* 350 F.3d 925, 929 (9th Cir. 2003).  Counsel is admonished that in future cases filed before this Court, he must delineate and explain with specificity what challenged medical evidence supports a particular challenged medical opinion – and why.  *See Putz*, 2022 WL 6943095, at *2 (noting that claimant waived "any argument based on [clinical] findings" where claimant, who was represented by the same counsel as the instant case, "simply list[ed] numerous clinical findings, unaccompanied by argument").  Accordingly, the Court focuses on the errors explicitly identified in Plaintiff's briefing and will not address Plaintiff's summaries further.

Plaintiff challenges the ALJ's evaluation of four medical opinions, including: (1) Dr. William Weiss's October 2019 examining psychological opinion, Tr. 496-501; (2), Dr. Todd Bowerly's October 2019 examining DSHS psychological opinion, Tr. 537-41; and (3) and (4) October 2019 and February 2020 opinions of non-examining state agency psychologists, Drs. John Wolfe and Jan Lewis, respectively, Tr. 59-64, 74-80.[4]

Under the applicable regulations, the ALJ must articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. *See* 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). An ALJ's consistency and supportability findings must be supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

### 1.     Examining Psychologist Dr. Weiss' Opinion

In October 2019, Dr. Weiss reviewed Plaintiff's special education and medical records, examined Plaintiff, and administered several mental and cognitive tests before diagnosing Plaintiff with "autism spectrum disorder requiring substantial support without accompanying intellectual . . . [or] language impairment[s]," major depressive disorder, and generalized anxiety disorder. Tr. 500. Dr. Weiss opined Plaintiff possessed marked impairments in three out of four categories, including social interaction, adaptation, and concentration and persistence.[5] Tr. 501. The ALJ found Dr. Weiss' opinion was "unpersuasive because it [was] overly restrictive." Tr. 27.

---

[4] To the extent that Plaintiff also intended to challenge the ALJ's evaluation of the August 2019 opinion from Plaintiff's treating therapist, Mark Medina, LICSW, as discussed in more detail below, Plaintiff failed to adequately state an argument. *See* Tr. 492.

[5] Dr. Weiss also opined that Plaintiff's recent and remote memory were both "impaired." Tr. 501.

1              **a.**    ***ALJ's Supportability Findings***

2          The ALJ found Dr. Weiss' opinion was unsupported by Dr. Weiss' "own exam notes,"

3   citing generally to the exam notes without further explanation.  *See* Tr. 27 (citing "11F/2-6," or

4   Tr. 497-501).

5          The ALJ additionally stated Dr. Weiss' opinion was "unsupported" by other "evidence in

6   the file," including Dr. Bowerly's exam notes, treatment notes from providers with Life Stance

7   and Real Life Counseling[,] and [Plaintiff's] statements regarding his activities of daily living."

8   Tr. 27.  Here, and throughout the decision, the ALJ conflates the supportability and consistency

9   factors.  *See Woods*, 32 F.4th at 792-94 & n.4 (consistency and supportability constitute two

10  distinct factors that should be treated separately).  The ALJ's comparison of Dr. Weiss' opinion

11  with the longitudinal record and other opinions and evidence within the longitudinal record, Tr.

12  27, constituted consistency – as opposed to supportability findings – as defined by the

13  controlling regulations.  See 20 C.F.R. § 416.920c(c)(2) (Regarding "consistency," the

14  regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative

15  medical finding(s) is with the evidence from other medical sources and nonmedical sources in

16  the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s)

17  will be."); *cf.* 20 C.F.R. § 416.920c(c)(1) (Regarding "supportability," the regulations provide

18  that "[t]he more relevant the objective medical evidence and supporting explanations presented

19  by a medical source are to support his or her medical opinion(s) or prior administrative medical

20  finding(s), the more persuasive the medical opinions or prior administrative medical finding(s)

21  will be.").

22         The Court has, therefore, addressed the ALJ's findings comparing Dr. Weiss' opinion

23  with Dr. Bowerly's exam notes, treatment notes from other providers, including Life Stance and

1   Real Life Counseling, and the other evidence regarding Plaintiff's activities of daily living,

2   below with its discussion of the consistency factor.

3       Regarding supportability, Plaintiff argues the ALJ erred because Dr. Weiss' opinion was

4   supported by his abnormal clinical findings.  *See* Dkt. 12 at 4-5.  The Commissioner counters the

5   ALJ appropriately found the opinion unsupported based on the "deviation between [the

6   psychologist's] benign objective clinical findings and [his] extreme conclusions regarding

7   Plaintiff's mental limitations."  Dkt. 18 at 7.

8       In evaluating Dr. Weiss' opinion, the ALJ did not adequately explain her supportability

9   findings.  *See* Tr. 27-28.  However, in accordance with *Kaufmann v. Kijakazi,* the Court has

10  reviewed "the ALJ's full explanation," including "scrutiniz[ing] all of the pages of [the] ALJ's

11  decision."  32 F.4th 843, 851 (9th Cir. 2022).  The Court notes, in discounting Plaintiff's

12  testimony, the ALJ found both Drs. Weiss' and Bowerly's "examination notes do not support

13  [their opined] excessive restrictions and indeed show that a less restrictive assessment of the

14  claimant's overall ability is warranted."  Tr. 25.  Regarding Dr. Weiss' opinion, the ALJ noted

15  Plaintiff's mixed results on Dr. Weiss' mental and cognitive tests and examinations.  Tr. 25

16  (noting that although Dr. Weiss' MSE demonstrated Plaintiff possessed "some tangential thought

17  processes and restrictions in his judgment and insight," the tests also showed "good proverb

18  interpretation, good abstract thinking, good calculations, good serial sevens, very good

19  information, clear speech, and no abnormal movements"); *see also* Tr. 25 (asserting that while

20  Dr. Weiss' tests showed that Plaintiff's "recent and remote memory were less than adequate, [he]

21  also noted that [Plaintiff] correctly remembered the last school he attended, correctly named that

22  past three presidents, recited six digits forward and four backward, and recalled three of four

23  objects after a five-minute delay").

ORDER REVERSING THE COMMISSIONER'S DECISION - 5

1    The ALJ, however, failed to provide any explanation *why* the cited examination findings

2    outweighed or rendered unpersuasive Dr. Weiss' other abnormal exam findings.  *See* Tr. 25, 27.

3    The ALJ also erroneously ignored Dr. Weiss' additional pertinent examination findings

4    regarding Plaintiff's ASD, including Plaintiff's "abnormal social approach," "failure in back-

5    and-forth conversation," "failure to initiate or respond to interactions," "deficits in nonverbal

6    communicative behaviors used for social interaction" and "in developing, maintaining, and

7    understanding relationships," "insistence on sameness with inflexible adherence to routines," and

8    Plaintiff's "highly restricted fixated interests that are abnormal in intensity and focus."  Tr. 500.

9    This failure to address Dr. Weiss' ASD-related findings resulted in the ALJ's impermissible

10   reliance on only those findings that were seemingly consistent with the ALJ's RFC assessment.

11   *See* AR 25.  Additionally, the ALJ also improperly "played doctor" in reinterpreting Dr. Weiss'

12   examination findings, while simultaneously rejecting Dr. Weiss' opinion based on those

13   findings.  *See Burget v. Comm'r of Soc. Sec.*, No. C17-1836 BAT, 2018 WL 4204057, at *3

14   (W.D. Wash. Sept. 4, 2018) (quoting *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal.

15   2008)) ("[A]s a lay person, an ALJ is 'simply not qualified to interpret raw medical data in

16   functional terms.'"); *see also Matthew N. C. v. Comm'r of Soc. Sec.*, No. 3:19-CV-05112-DWC,

17   2019 WL 4439890, at *4 (W.D. Wash. Sept. 17, 2019) (discussing *Banks v. Barnhart*, 434 F.

18   Supp. 2d 800, 805 (C.D. Cal. 2006)) (noting "the ALJ's RFC determination or finding must be

19   supported by medical evidence, particularly the opinion of a treating or an examining

20   physician").

21   Accordingly, the ALJ's conclusion that Dr. Weiss' opinion lacked supportability is not

22   supported by substantial evidence.  However, under *Woods*, a finding that Dr. Weiss' opinion is

23   inconsistent with the longitudinal record, if supported by substantial evidence, would be a

1    sufficient independent basis for the ALJ to conclude that Dr. Weiss' opinion was unpersuasive.

2    *See* 32 F.4th at 792-94 & n.4.  Accordingly, the Court turns to the ALJ's consistency findings.

3              **b.**    ***ALJ's Consistency Findings***

4              The ALJ found Dr. Weiss' opinion was inconsistent because it differed from the opinions

5    of the state agency physicians, treatment notes from Plaintiff's therapists and counselors,

6    Plaintiff's own statements regarding his activities of daily living, and examination notes from Dr.

7    Bowerly.  Tr. 27 (citing Tr. 59-60, 62-65, 75-80, 278-323, 335-36, 348-49, 350, 353, 365, 371,

8    406-11, 414-15, 418-23, 425-26, 428, 430, 442, 449-54, 456-57, 471-73, 475, 487, 493, 497-501,

9    506-07, 515-16, 537-42, 545-47, 551-53, 561-62, 586-87, 589, 591, 593, 595-98, 600-01, 602,

10   604, 606-07).[6]

11             Plaintiff argues the fact Dr. Weiss' opinion differed from the state agency psychologists'

12   opinions is not in and of itself a sufficient reason for rejecting Dr. Weiss' opinion, noting Drs.

13   Wolfe and Lewis did not examine or treat Plaintiff.  Dkt. 12 at 4-5. Plaintiff further argues Dr.

14   Bowerly's examination findings were, in fact, consistent with Dr. Weiss' opinion, and the ALJ

15   failed to explain how the other cited treatment notes and records contradicted Dr. Weiss'

16   opinion.

17             In opposition, the Commissioner cites *Johnson v. Kijakazi*, 2022 WL 3998572, at *1 (9th

18   Cir. 2022), in support of her argument that the ALJ properly discounted Dr. Weiss' opinion

19   based on its inconsistency with the state agency consultants' opinions.  Dkt. 18 at 7 (construing

20   *Johnson* as holding that an "ALJ properly rejected a physician's opinion where it conflicted with

21

22   ───────────────
     [6] The Court notes that several of the records cited by the ALJ within this string cite are in fact
     duplicates of other records to which the ALJ also cited. *See, e.g.,* Tr. 27 (citing to "4F22," Tr.
23   371, a March 19, 2019 record from Plaintiff's therapist, Mark Medina, which is identical to
     "6F3," Tr. 407, and "8F22," Tr. 449, records to which the ALJ also cites in the same string
     citation).

ORDER REVERSING THE COMMISSIONER'S DECISION - 7

1    the 'highly persuasive' opinions of two state psychological consultants").  The Commissioner

2    further contends the ALJ's consistency findings regarding Dr. Weiss' opinion were reasonable

3    for the reasons the ALJ explained in her subsequent evaluation of the state agency consultants'

4    opinions.  *See* Dkt. 18 at 8; Tr. 28-29 (ALJ's evaluation of Drs. Lewis' and Wolfe's opinions).

5    Specifically, the Commissioner contends Dr. Weiss' opinion was inconsistent with Dr.

6    Bowerly's examination notes and the other treatment records that demonstrated "good

7    responsiveness to medication and improvement in [Plaintiff's] symptoms during periods of good

8    compliance."  *See* Dkt. 18 at 8 (citing Tr. 396, 408-10, 501, 541); Tr. 28-29 (ALJ's evaluation of

9    Drs. Lewis' and Wolfe's opinions).  Finally, the Commissioner argues the ALJ properly found

10   Dr. Weiss' opinion is inconsistent with Plaintiff's "admitted daily activities" (ADL).  Dkt. 18 at

11   7 (citing Tr. 496, 499-500, 540).

12          In reply, Plaintiff argues none of the ADLs cited by the ALJ and reiterated by the

13   Commissioner are inconsistent with Dr. Weiss' opinion.  Dkt. 19 at 4.  Additionally, Plaintiff

14   contends there is no evidence he ever achieved "sustained improvement."  Dkt. 19 at 4.

15          The existence of contradictory opinions from the state agency psychologists is not in and

16   of itself sufficient to render Dr. Weiss' opinion unpersuasive.  However, Plaintiff incorrectly

17   suggests Dr. Weiss' opinion carries more weight simply based on his status as an examining

18   physician, Plaintiff is incorrect because the 2017 regulations eliminated the hierarchical

19   distinctions between treating, examining, and non-examining opinions.  Nevertheless, the ALJ

20   remained obligated to explain why the less restrictive opined limitations from Drs. Lewis and

21   Wolfe were more persuasive than the marked opined limitations stated by other medical sources,

22   including Dr Weiss.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir.

23   2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some

1   reasoning in order for us to meaningfully determine whether the ALJ's conclusions were

2   supported by substantial evidence."); *see also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.

3   1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for

4   an adjudicator's rejection" of certain evidence).  To hold otherwise would relieve the ALJ of her

5   job of fully evaluating the medical opinion evidence.

6          The case relied on by the Commissioner, *Johnson v. Kijakazi*, is not to the contrary.  *See*

7   2022 WL 3998572, at *1.  In *Johnson* the Ninth Circuit upheld the ALJ's supportability findings

8   regarding a psychologist's opinion, while "additionally" noting the opinion conflicted with the

9   opinions of state agency psychologists.  *Id.* (concluding psychologist's normal examination

10  findings were sufficient to undermine her opined marked mental limitations and noting also that

11  although the psychologist noted symptoms of depression, the psychologist did not diagnose

12  depression).  Here, by contrast, the ALJ's supportability findings were insufficient.

13         The ALJ here failed to adequately explain why Drs. Lewis' and Wolfe's less restrictive

14  limitations were more appropriate than the marked limitations opined to by Dr. Weiss and other

15  medical sources, and also failed to provide substantial evidence in support of her adoption of the

16  less restrictive limitations in conjunction with Plaintiff's RFC assessment.  The October 2019

17  examination findings from Dr. Bowerly were not inconsistent with Dr. Weiss' opinion.  *See* Tr.

18  540-41; *cf.* Tr. 496-501.  In characterizing them as such, the ALJ committed the same errors that

19  she did in finding Dr. Weiss' opinion unsupported by his own examination findings, as discussed

20  above.  Significantly, the ALJ downplayed Dr. Bowerly's findings regarding Plaintiff's difficulty

21  with recent memory and concentration, his "tangential thought processes," his depressive and

22  anxious symptoms, and his limitations in judgment and insight in favor of only those findings

23  that aligned with the ALJ's assessed RFC.  *See* Tr. 25 (relying on observations regarding

Plaintiff's grooming and presentation, along with his cooperation, good effort, clear and linear thinking, and his description of his ADLs and continued treatment). However, again, there is no explanation as to why the selective findings upon which the ALJ relied should be afforded more weight than the other, equally pertinent findings made by Dr. Bowerly – or, importantly, how and or why the particular cited findings were relevant to and or undermined Dr. Weiss' opined marked social, adaptation, and concentration limitations.

Moreover, like Dr. Weiss' own exam findings, the ALJ again inappropriately played expert and reinterpreted Dr. Bowerly's findings for herself. *See* Tr. 25, 27. In fact, as discussed in more detail below with Dr. Bowerly's opinion, Dr. Bowerly himself opined that based on his examination findings and his review of the record, Plaintiff suffered from several marked limitations, including in his ability to interact socially and to adapt – an opinion that was consistent with Dr. Weiss' opinion. *See* Tr. 538.

Nor did Plaintiff's described ADLs undermine the consistency of Dr. Weiss' opinion. Elsewhere in the ALJ's decision, the ALJ found Plaintiff's reported ADLs included cooking, cleaning, shopping, washing dishes, feeding his pets, vacuuming, weeding and mowing the lawn, buying food, playing video games, and engaging in 3D animation. *See* Tr. 25 (citing Plaintiff's statements to Drs. Weiss and Bowerly at Tr. 496-501, 540-41). The ALJ suggests these ADLs undermined Drs. Weiss' opined limitations. Tr. 27. Again, the ALJ fails to explain how the particular activities undermined the particular marked limitations to which Dr. Weiss opined – especially given the evidence that Plaintiff only shopped when driven by his parents and when accompanied by a parent, and that Plaintiff required constant reminders to complete his chores around the house. Moreover, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way

1   detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044,

2   1050 (9th Cir. 2001) (citations omitted); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

3   1998) (citations omitted) ("disability claimants should not be penalized for attempting to lead

4   normal lives in the face of their limitations"). "One does not need to be 'utterly incapacitated' in

5   order to be disabled." *Vertigan*, 260 F.3d at 1050 (citations omitted).

6        Finally, the ALJ failed to adequately explain how the additional records undermined Dr.

7   Weiss' opinion. Tr. 27 (citing Tr. 59-60, 62-65, 75-80, 278-323, 335-36, 348-49, 350, 353, 365,

8   371, 406-11, 414-15, 418-23, 425-26, 428, 430, 442, 449-54, 456-57, 471-73, 475, 487, 493,

9   497-501, 506-07, 515-16, 537-42, 545-47, 551-53, 561-62, 586-87, 589, 591, 593, 595-98, 600-

10  01, 602, 604, 606-07). As the Commissioner points out, the ALJ's evaluation of the state agency

11  psychologist's opinions suggests the treatment and counseling records demonstrate Plaintiff

12  achieved "observable improvement when sustaining good adherence to his medication plans."

13  Tr. 28. The Court further notes that elsewhere in her decision, the ALJ included identical string

14  citations to the same record evidence in similarly asserting that Plaintiff showed "good

15  responsiveness to medication and improvement in his symptoms during periods of good

16  compliance" and that his providers "report[ed] noticeable improvement and stability in

17  [Plaintiff's] anxiety and depression symptoms when [he was] taking his medication as directed."

18  Tr. 28, 29 (finding persuasive and adopting opined limitations from state agency psychologists,

19  Drs. Lewis and Wolfe); *accord* Tr. 26 (citing same evidence in discounting Plaintiff's

20  testimony).

21        The ALJ errs, though, because the cited record evidence upon which she relied concerned

22  Plaintiff's treatment for and corresponding improvement in his depression and anxiety – but *not*

23  Plaintiff's ASD and/or the symptoms stemming from his ASD. *See* Tr. 408-09, 506. 546, 551,

561-62, 602 (discussing Plaintiff's use of SSRIs, such as Zoloft and Lexapro, which at times helped relieve Plaintiff's symptoms associated with his depression and anxiety). This is in spite of the fact at step two, the ALJ found in addition to depression and anxiety, Plaintiff's ASD was also severe, and Dr. Weiss' opinion was itself based in part on Plaintiff's ASD and related symptoms. Tr. 18; *see also* Tr. 500 (describing Plaintiff's abnormal social and communicative behaviors, along with adaptation challenges related to his fixation and insistence on certain things).[7]

Additionally, the ALJ erred in her consistency finding because the longitudinal record demonstrates the symptoms associated with Plaintiff's depression and anxiety waxed and waned over time such that, as Plaintiff notes, there was no sustained improvement. Dkt. 12 at 5; Dkt. 19 at 4. The ALJ's suggestion Plaintiff's low points were the result of his noncompliance with his treatment plan erroneously assumes that contrary to the evidence otherwise, Plaintiff was capable of full compliance with his prescription medication. It also assumes the symptoms of Plaintiff's depression and anxiety would not have waxed and waned as they did absent the admitted noncompliance. However, these assumptions ignore evidence Plaintiff remained in therapy even during periods of medication noncompliance (which his mother has testified was due in large part to the fact that his parents drove him and even accompanied him at times). Such assumptions also fail to address the record evidence that Plaintiff's mental and behavioral impairments themselves – including his ASD – were the reason that he was unable to consistently and routinely adhere to prescription medication regimens unless he had constant and

---

[7] As noted above, the ALJ includes within the string citation multiple citations to the very same record(s) that appears multiple times within the administrative record. *See infra* n. 6. Accordingly, the number of records to which the ALJ actually cites within the string citations are fewer than what they appear to be.

1    regular reminders to do so.  *See* Tr. 233-34, 237.  Finally, the ALJ failed to address evidence

2    regarding the physical side effects Plaintiff experienced while taking the SSRIs, which, as stated

3    in Plaintiff's medical records, interfered with his compliance while on the medication.  *See* Tr.

4    515.

5          For the above reasons, the ALJ erred in evaluating Dr. Weiss' opinion.  Because the error

6    affected the ALJ's subsequent RFC assessment and his step five findings, it was not harmless.

7          **2.    Examining Psychologist Dr. Bowerly's Opinion**

8          Like Dr. Weiss, in October 2019, Dr. Bowerly reviewed Plaintiff's special education

9    records, medical records, counseling records, administered several cognitive and psychological

10   tests, and examined Plaintiff.  Tr. 537-41.  Dr. Bowerly diagnosed autism spectrum disorder,

11   major depressive disorder, and generalized anxiety disorder.  Tr. 541.  He opined Plaintiff

12   possessed several moderate limitations but he was markedly limited in his abilities to adapt to

13   changes in a routine work setting, to make simple work-related decisions, to ask simple questions

14   or request assistance, to communicate and perform effectively in a work setting, to maintain

15   appropriate behavior in a work setting, to complete a normal work day and work week without

16   interruptions from psychologically-based symptoms, and to set realistic goals and plan

17   independently.  Tr. 538.  Dr. Bowerly also rated Plaintiff's overall functional limitations as

18   marked.  Tr. 538.  The ALJ found Dr. Bowerly's opinion not persuasive for the same reasons

19   that she found Dr. Weiss' opinion unpersuasive.  Tr. 27.

20          **a.    *ALJ's Supportability Findings***

21

22

23

1  The ALJ found Dr. Bowerly's opinion was unsupported by his "own exam notes."[8]  Tr.

2  27; Tr. 537-41.  As discussed above regarding the ALJ's evaluation of Dr. Weiss' opinion,

3  elsewhere in her decision, the ALJ found Dr. Bowerly's "examination notes do not support such

4  excessive restrictions and indeed show that a less restrictive assessment of the claimant's overall

5  ability is warranted."  Tr. 25.  Again, the ALJ noted Plaintiff's mixed results on Dr. Bowery's

6  mental and cognitive tests and examinations, along with Plaintiff's statements to Dr. Bowerly.

7  Tr. 25.  However, the ALJ failed to adequately explain why the particular exam findings

8  outweigh or diminish the other exam findings that do not support the ALJ's assessed RFC, and,

9  in particular, why Dr. Bowerly's opined marked limitations are themselves undermined by the

10  mixed normal and abnormal findings.  Tr. 25, 27 (observing depressive and anxious symptoms,

11  that Plaintiff displayed minimal eye contact, and that he was unable to recall any of the three

12  words given on a recent memory test).

13           **b.**     ***ALJ's Consistency Findings***

14           The ALJ also found Dr. Bowerly's opinion lacked consistency for reasons identical to

15  those she proffered in her evaluation of the consistency of Dr. Weiss' opinion:  it differed from

16  the opinions of the state agency physicians, treatment notes from Plaintiff's therapists and

17  counselors, Plaintiff's own statements regarding his ADLs, and Dr. Weiss' exam findings.[9]  Tr.

18  27 (citing Tr. 59-60, 62-65, 75-80, 278-323, 335-36, 348-49, 350, 353, 365, 371, 406-11, 414-15,

19  418-23, 425-26, 428, 430, 442, 449-54, 456-57, 471-73, 475, 487, 493, 497-501, 506-07, 515-16,

20  537-42, 545-47, 551-53, 561-62, 586-87, 589, 591, 593, 595-98, 600-01, 602, 604, 606-07).  Dr.

21  _____

22  [8] Again, like Dr. Weiss' opinion, the ALJ conflated the supportability and consistency findings.
The Court has relabeled the respective findings as appropriate.

23  [9] The only difference is the ALJ's consistency findings regarding Dr. Bowerly's opinion relied in
part on Dr. Weiss' examination findings, whereas the ALJ's consistency findings regarding Dr.
Weiss' opinion relied in part on Dr. Bowerly's examination findings.

Weiss' and Dr. Bowerly's opinions about Plaintiff's limitations were nearly identical in that they both contained several of the same marked limitations; thus, for the same reasons discussed above, the ALJ's findings regarding the consistency of Dr. Bowerly's opinion were not supported by substantial evidence.

Because the error affected the ALJ's subsequent RFC assessment and his step five findings, it was not harmless.

### 3.      Opinions from Non-Examining State Agency Psychologists, Drs. Lewis and Wolfe

In October 2019 and February 2020, Drs. John Wolfe and Jan Lewis, respectively, provided opinions regarding Plaintiff's functional limitations. Tr. 59-64, 74-80.  Both psychologists opined Plaintiff had no limitation in terms of his understanding and memory, but had moderate limitations in his abilities to interact with others, concentrate, persist, or maintain pace, and to adapt or manage himself.  AR 62-64, 78-80.

The ALJ offered no *bona fide* supportability findings regarding either opinion,[10] but did find that both opinions were consistent with the record evidence, noting, in particular, that Plaintiff "show[ed] good responsiveness to medication and improvement in his symptoms during periods of good compliance," citing to the same evidence the ALJ cited in support of her evaluation of Drs. Bowerly's and Weiss' opinions.  Tr. 28 (citing Tr. 59-60, 62-65, 75-80, 278-323, 335-36, 348-49, 350, 353, 365, 371, 406-11, 414-15, 418-23, 425-26, 428, 430, 442, 449-54, 456-57, 471-73, 475, 487, 493, 497-501, 506-07, 515-16, 537-42, 545-47, 551-53, 561-62, 586-87, 589, 591, 593, 595-98, 600-01, 602, 604, 606-07).  The ALJ further found that the opinions were consistent with Plaintiff's statements regarding his ADLs.  Tr. 28.

---

[10] Again, the ALJ states that she is considering supportability, but conflates supportability and consistency.

ORDER REVERSING THE COMMISSIONER'S DECISION - 15

1    The parties mainly repeat the same arguments described above regarding the ALJ's

2    evaluation of Drs. Weiss' and Dr. Bowerly's opinions.  Plaintiff argues the opinions are

3    inconsistent with the therapy records, the other medical opinions, and Plaintiff's and his mother's

4    testimony.  The Commissioner counters the opinions are well-supported by and consistent with

5    Plaintiff's activity level and treatment records.[11]  Dkt. 18 at 3-5.  However, in addition to the

6    ADLs already discussed above, the Commissioner additionally asserts evidence that Plaintiff

7    obtained his driver's license and went on job interviews supported the ALJ's decision to adopt

8    the moderate limitations opined to by Drs. Wolfe and Lewis.  Dkt. 18 at 5 (citing Tr. 408-09,

9    415, 499-501, 540, 545, 591, 595, 603 – all cited by ALJ, and 376 and 570 – not cited by ALJ).

10    The Court notes although the ALJ did not specifically reference Plaintiff's driver's

11    license and job interviews in conjunction with her evaluation of the medical opinions, the ALJ

12    nevertheless included citations to records that pertained to Plaintiff's driver's license and/or his

13    job search within her long string citations to record evidence.  *See* Tr. 27-28 (citing Tr. 364, 406,

14    546, 591, 594-97, 604); Tr. 364 (Plaintiff tells his therapist in February 2019 that he is making a

15    plan with his father to practice driving once a day so that he can hopefully get his driver's license

16    and go to school and/or get a job); Tr. 591 (Plaintiff passes the test for his driver's license in July

17    2021, and advises his therapist that he will start applying for jobs); *but see* Tr. 406 (during March

18    2019, Plaintiff advises his therapist that he no longer wants to work on practicing driving or

19    getting a driver's license because he is afraid of having an accident); Tr. 546 (Plaintiff notes in

20    January 2020 that has never gotten past the interview stage for a job); Tr. 594-97 (therapist

21

22    [11] The Court notes that the Commissioner cites to additional reasons and evidence not relied on
     by the ALJ.  *See, e.g.,* Dkt. 18 at 5 (citing Tr. 376, 570).  Under *Bray v. Commissioner*, the Court
23    is limited to the reasons provided by the ALJ.  554 F.3d 1219, 1225-26 (9th Cir. 2009) (court
     reviews ALJ's decision "based on the reasoning and factual findings offered by the ALJ – not
     post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking").

reports in October 2021 that Plaintiff's parents' desire for him to get a job is causing a lot of anxiety, and notes that Plaintiff had an "awful" interview at Walmart and did not get the job); Tr. 604 (therapist observes in December 2021 that Plaintiff is not feeling "great" depression-wise and is "anxious and apathetic" about getting a job).  Additionally, elsewhere in her decision, the ALJ noted Plaintiff obtained his driver's license and reported his "next step" was to apply for jobs.  Tr. 26 (citing Tr. 589, 591) (therapist's records from June and July 2021 regarding Plaintiff completing his practice drives necessary to test for his driver's license).

The Court finds the ALJ failed to adequately explain how the cited evidence supported adopting Drs. Wolfe's and Lewis' opined limitations over the other medical opinions offering more restrictive functional limitations.  *See* Tr. 26, 27-29.  Presumably, if Plaintiff indeed utilized his driver's license after obtaining it in 2021, and or if Plaintiff worked after obtaining his driver's license, such facts may have supported the less restrictive adaptation limitation. However, the record evidence and testimony demonstrate that is *not* what occurred.  Instead, Plaintiff only ever drove one time after obtaining his license in 2021, and, as of the April 2022 hearing, Plaintiff did not have a job and had not enrolled in any classes since his 2016 graduation from high school – facts the ALJ failed to address.  *See* Tr. 26, 595, 604, 41, 43-44.

For these reasons, the ALJ's evaluation of Drs. Wolfe's and Lewis' opinions is not supported by substantial evidence.  Because the error affected the ALJ's subsequent RFC assessment and his step five findings, it was not harmless.

### 4.    Treating Therapist, Mark Medina's Opinion

In August 2019, Plaintiff's treating therapist, LICSW Mark Medina, submitted a letter stating he had treated Plaintiff for generalized anxiety disorder and major depression since October 2018.  Tr. 492, 28.  Mr. Medina stated Plaintiff had also been diagnosed with autism

1   spectrum disorder and he had the "impression that a developmental disorder may [also] be

2   present." Tr. 492.  Mr. Medina asserted Plaintiff's "significant emotional distress prevents [his]

3   participation in activities of daily living," and would also "likely prevent him from maintaining

4   employment." Tr. 492.

5           The ALJ found Mr. Medina's opinion unpersuasive.  Tr. 28.  In terms of supportability,

6   the ALJ stated the opinion was conclusive and overly vague, and it was unsupported by

7   Medina's own counseling notes.  Tr. 28.  The ALJ provided consistency findings, including

8   record citations, that were identical to his consistency findings regarding the other medical

9   opinions.  *See* Tr. 28.

10          Plaintiff argues "for the same reasons" the ALJ erred in rejecting Drs. Bowerly's and

11  Weiss' opinions, the ALJ also erred regarding Medina's opinion.  Dkt. 12 at 7.  Plaintiff,

12  however, failed to comply with the Court's scheduling order that he list all claimed errors

13  starting on page one of the opening brief. The opening brief did not properly put the

14  Commissioner on notice Plaintiff was challenging the ALJ's findings regarding Mr. Medina's

15  opinion. Instead, the challenge was buried in a single sentence contained in a long summary of

16  "other medical evidence." *See* Dkt. 12 at 7.  The Court does not fault the Commissioner for not

17  addressing this issue.  *See* Dkt. 18.

18          Moreover, Plaintiff's single sentence conclusory argument likening Mr. Medina's

19  opinion to the other medical opinions fails to properly develop an argument regarding how the

20  ALJ erred – especially given the dissimilarities between Medina's opinion and the other opinions

21  and the ALJ's unique supportability findings regarding Medina's opinion.[12]  As the Court has

22

23

---

[12] As noted, the ALJ's consistency findings regarding therapist Medina's opinion were identical
to her consistency findings regarding Drs. Bowerly's and Weiss' opinions, including the same

already indicated, a Plaintiff fails to establish error by simply presenting conclusory statements that fail to articulate a specific rationale and basis showing how and why the ALJ harmfully erred.

However, because the Court finds the ALJ must on remand reassess the medical opinion evidence from Drs. Bowerly and Weiss and the two state agency psychologists, the Court finds it appropriate that the ALJ also reassess Mr. Medina's opinion.

**B.      Testimony of Plaintiff and his Mother**

Plaintiff's mother, C.B., submitted two function reports on Plaintiff's behalf in July 2019 and January 2020, both of which the ALJ considered.  Tr. 29; Tr. 230-37 (July 2019 function report); Tr. 252-59 (January 2020 function report).

C.B. stated Plaintiff's anxiety, depression, and "crippling fear of social interaction" limit his ability to work.  Tr. 230, 252.  She explained Plaintiff possesses a "deep fear" of socializing with anyone outside of his immediate family, and noted the anxiety caused by contact with unknown people has resulted in Plaintiff's public "crying outbursts."  Tr. 252, 254, 257, 237. C.B. stated the only interaction with others Plaintiff tolerates is online, when people are physically distant.  Tr. 253, 257.  When Plaintiff is stressed or there is a change in his routine, he reacts with angry outbursts – "yelling, slamming doors, [and] refus[ing] to comply."  Tr. 258.

C.B. also stated Plaintiff has a short attention span, is easily distracted, and is often unable to follow directions for new tasks.  Tr. 254.   She noted he is unable to focus on a single task and requires regular reminders even with routine tasks, including hygiene, due to his lack of focus.  AR 233, 234, 237.  Plaintiff can prepare simple meals, help out with dishes, feed pets,

---

string citation of record evidence in support.  Tr. 27-28.  However, the ALJ's supportability findings were distinct from those offered regarding Drs. Bowerly and Weiss.  Tr. 28.

ORDER REVERSING THE COMMISSIONER'S DECISION - 19

1   and take out the recycling bin with multiple reminders.  Tr. 233, 255.  Plaintiff is unwilling to do

2   any additional chores at home.  Tr. 255.

3        Plaintiff testified at the April 2022 hearing.  Tr. 41-49.  He testified he had recently

4   obtained a driver's license in 2021, but due to his own anxiety and fear, he had only ever driven

5   once.  Tr. 41 (noting that he had "done it once and that was the first and last time I've tried it").

6   Plaintiff does not take public transportation, so his parents drive him to appointments or

7   shopping, and he rarely leaves the house with the exception of grocery shopping.  Tr. 42, 43, 44.

8   Plaintiff had not worked or taken any classes in the nearly six years since he graduated from high

9   school in 2016.  Tr. 43-44, 284.  Although Plaintiff applied for and interviewed for jobs at a

10  warehouse, Walmart, and Papa John's, he did not receive any job offers.  Tr. 43-44.

11       Plaintiff testified that other than his family, he has no social interaction outside of his

12  computer.  Tr. 42.  He stated he does the dishes every day and he vacuums and cleans on the

13  weekend, but acknowledged he was "poor" at doing his chores consistently and he procrastinates

14  and wastes time.  Tr. 42, 47.  Plaintiff opined his short attention span, procrastination, and

15  "zoning out" would likely prohibit him from holding a job for any meaningful amount of time.

16  Tr. 45, 47.

17       Plaintiff testified he experiences anxiety every day related to "virtually anything," but

18  especially related to leaving the house or when there is a stranger involved.  Tr. 48.  He stated he

19  can only tolerate going outside by himself to check the mail.  Tr. 48.

20       The ALJ found Plaintiff presented objective medical evidence establishing generally his

21  medically determinable impairments could cause some of the symptoms alleged, and no

22  affirmative evidence of malingering.  Tr. 24.  The ALJ was therefore required to provide

23  "specific, clear and convincing reasons" for rejecting Plaintiff's testimony concerning the

ORDER REVERSING THE COMMISSIONER'S DECISION - 20

1    intensity, persistence, and limiting effects of his symptoms. *Tommasetti v. Astrue*, 533 F.3d

2    1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996));

3    *accord Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (confirming that the "clear and

4    convincing" standard continues to apply).

5           The ALJ provided multiple reasons for discounting Plaintiff's testimony, contending that

6    the testimony was inconsistent with record evidence that demonstrated Plaintiff's impairments

7    did "not cause more restrictions than the [ALJ's assessed] residual functional capacity,"

8    including:

9           (1)    examination notes from Drs. Bowerly and Weiss, Tr. 24-25;

10          (2)    other treatment and exam notes from the record regarding Plaintiff's
                   responsiveness to medications and treatment, and his stability and improvement
11                 when he is in compliance with his medications, Tr. 26 (citing Tr. 371, 406, 408,
                   410-11, 428, 430-32, 449-50, 452-53, 506, 515, 551, 561, 600, 603);
12
            (3)    the fact that Plaintiff obtained a driver's license in 2021, and his "next step" was
13                 looking for jobs at that time, Tr. 26 (citing Tr. 589, 591);

14          (4)    Plaintiff's therapy records that show that P was "consistently alert, fully oriented,
                   cooperative, in no acute distress, appropriate dress, grooming, and hygiene,
15                 normal speech, intact associations, logical thought processes, normal cognition,
                   [possessed] good memory, intact fund of knowledge, focused attention and
16                 concentration, normal insight, unimpaired judgement, no abnormal movements,
                   paranoia, or hallucinations," Tr. 26 (citing Tr. 586-87, 589, 591, 593, 595-98,
17                 600-01, 603-04, 606-07);

18          (5)    treatment notes from Plaintiff's therapist and other providers that show that
                   Plaintiff denied suicidal or homicidal ideation, Tr. 26 (citing Tr. 335-36, 348-49,
19                 350, 352, 364, 371, 407-09, 414-15, 418-19, 422, 425-26, 428, 430, 442, 449-51,
                   454, 456-57, 459-60, 471-73, 475, 487, 493, 523); and
20
            (6)    educational records that showed that P was "mainstreamed" beginning his
21                 sophomore year of high school and that he earned the necessary credits to
                   graduate, along with his teachers' reports of improvement, Tr. 24 (citing Tr. 278-
22                 323, 497).

23

The ALJ provided identical record citations and support for the first four reasons above as those she provided in conjunction with her evaluation of the medical opinion evidence.

Plaintiff contends the ALJ erred in evaluating his testimony, arguing that the ALJ's failure to properly evaluate the medical opinion evidence tainted her evaluation of Plaintiff's testimony.  Dkt. 12 at 8.  Plaintiff additionally argues the ALJ has again selectively cited to certain findings, which themselves fail to undermine his testimony.

The Commissioner counters the ALJ reasonably rejected Plaintiff's testimony because it conflicted with objective treatment records.  Dkt. 18 at 11-12.  Additionally, the Commissioner contends that the ALJ reasonably found Plaintiff's testimony inconsistent with his ADLs.  Dkt. 18 at 13.

In reply, Plaintiff contends ALJ did not specifically offer his ADLs as a reason for discounting his testimony.  Dkt. 19 at 7. Alternatively, Plaintiff asserts his ADLs did not undermine his testimony as they did not show he could perform full-time competitive work.

The ALJ's first four reasons set forth above do not constitute "specific, clear and convincing reasons" for discounting Plaintiff's testimony for the reasons already discussed regarding the medical opinion evidence.  First, the ALJ cherry-picked the examination findings from both Drs. Weiss' and Bowerly's exams that were consistent with her RFC assessment, improperly ignoring and/or discounting without explanation other abnormal findings.  The ALJ also improperly substituted her interpretation of the raw data for those of the psychologists.

Second, the records cited by the ALJ regarding alleged improvement fail to demonstrate any improvement in Plaintiff's ASD-related symptoms, and also fail to account for the fact Plaintiff's depression and anxiety-related symptoms waxed and waned over the years in part due

to noncompliance that may have been caused by Plaintiff's ASD and the severe impairments themselves.

Third, Plaintiff's job search and driver's license do not undermine Plaintiff's testimony regarding his limitations.  As noted above, Plaintiff drove just once and he never obtained a job.[13]  Fourth, the ALJ fails to adequately explain how the additional cited therapy records undermine Plaintiff's testimony.  The ALJ again cherry-picked routine observations from certain records without explaining how those observations impact Plaintiff's limitations.  *See* Tr. 26. Plaintiff's presentation at his consultative examinations and select therapy sessions, including his grooming and hygiene, did not undermine his testimony; moreover, the ALJ has failed to adequately address evidence that did not conform with her RFC assessment.[14]  The same reasoning applies to the ALJ's fifth reason:  the absence of suicidal and homicidal ideations in Plaintiff's therapy records.  Here, there was never any suggestion that Plaintiff's limitations stemmed from homicidal or suicidal impulses; nor was Plaintiff required to be suicidal or homicidal before marked functional limitations were warranted.

Plaintiff is correct the ALJ did not cite to his ADLs as a specific reason for rejecting his testimony.  Dkt. 19 at 7; *see* Tr. 24-26 (ALJ's rejection of Plaintiff's testimony).  The ALJ *described* Plaintiff's ADLs, as reported by Plaintiff to Drs. Weiss and Bowerly, but unlike the medical opinion evidence, the ALJ did not specifically rely on them as a reason for rejecting

---

[13] The Court notes that, in opposition, the Commissioner relies on evidence and reasons not provided by the ALJ for discounting Plaintiff's testimony, which the Court declines to consider. *See* Dkt. 18 at 12 (citing Tr. 376, 545, 591, 595); *see also Bray*, 554 F.3d at 1225-26.

[14] Again, here, the Commissioner relies in part on evidence and reasons not relied on by the ALJ, which the Court does not consider.  *See* Dkt. 18 at 12 (citing Tr. 533, 535, 544); *see also Bray*, 554 F.3d at 1225-26.  The Court further notes that the Commissioner appears to have mischaracterized some of the uncited records.  *See, e.g., Dkt.* 18 at 12 (citing Tr. 535, therapist Medina's November 2019 notes, and misconstruing Medina's and/or Plaintiff's apparent *goal* of "reduced guilt and shame" for Plaintiff as an established fact).

Plaintiff's testimony.  *See* Tr. 24-26; *cf.* Tr. 27.  As such, the Commissioner's related argument is an impermissible *post hoc* rationale.  Nevertheless, the Court notes for all the same reasons above with respect to Drs. Bowerly's, Weiss', Wolfe's and Lewis' opinions, Plaintiff's ADLs are not a valid reason to rejecting Plaintiff's testimony.

Turning to the ALJ's sixth reason, the Court finds the ALJ failed to adequately consider Plaintiff's educational records as a whole, and instead selected only those notations and records most favorable to the ALJ's assessed RFC, without explaining why the contradictory evidence should be discounted.  *See* Tr. 24.  Additionally, the ALJ erred in failing to consider the relevant social security ruling ("SSR") applicable to Plaintiff's case, SSR 11-2p, which governs the evaluation of disability in young adults.  *See* Social Security Ruling ("SSR") 11-2p, *Titles II and XVI: Documenting and Evaluating Disability in Young Adults*, 2011 WL 4055665, at *1 (Sept. 12, 2011).[15]

Notably, among other requirements, SSR 11-2p specifically identifies four categories of evidence that an ALJ should consider in determining a young adult's functioning, including: (1) evidence concerning whether the young adult received special education and related services; (2) evidence pertaining to any IEP formulated for the young adult, describing the skills they needed to develop; (3) evidence pertaining to IEP transition goals, whether transitioning to supervised and supported work and living settings, or independent ones; and (4) considerations related to the fact that goals contained in an IEP may be set at an achievable level to foster a sense of

---

[15] A "young adult" is defined as "between the ages of 18 to approximately 25."  SSR 11-2p, 2011 WL 4055665, at *2.  Here, Plaintiff was twenty-one years-old at the time he filed his SSI application in April 2019, and he was he was twenty-four years-old at the time the ALJ issued her decision.  Tr. 16, 29, 31.  Thus, Plaintiff would have been a young adult under SSR 11-2p for the entire relevant period.

1   accomplishment, and "may be lower than what would be expected of a young adult without

2   impairments." *Id.* at *10-13.

3        Here, the ALJ highlighted only the most favorable facts from Plaintiff's educational

4   records, ignoring less favorable information and failing to consider Plaintiff's IEP and records as

5   a whole.  The ALJ accurately notes Plaintiff was "mainstreamed" beginning his sophomore year

6   in high school, and he earned the necessary credits to ultimately graduate from high school.  Tr.

7   24.  However, the ALJ failed to adequately address that although Plaintiff was "mainstreamed"

8   for some time in high school, during that time, he continued to have an IEP, continued to attend

9   regular special educational classes due to his "emotional/behavioral disability," and, at one point

10  during his senior year, Plaintiff was failing three classes and at risk of not graduating. [16]  *See* Tr.

11  280-82, 284, 287.  While some teachers reported improvement (as noted by the ALJ), other

12  teachers simultaneously acknowledged Plaintiff's difficulties with focus, behavior, and

13  completion of assignments.  *See* Tr. 24; Tr. 281-83 (Plaintiff's teachers note his refusal to take

14  his headphones off, to adequately participate in class, his absences, and his frustration when

15  situations don't go his way).  The ALJ also failed to address Plaintiff's lengthy history receiving

16  special education services.  *See* Tr. 298 (Plaintiff's educational records explain that he qualified

17  for and received special education services beginning in 2004, when he was in first grade, due to

18  his emotional disturbance and behavioral and communication disorder.).

19       Given Plaintiff's age, IEP, and receipt of special education services, SSR 11-2p required

20  the ALJ here to specifically consider how Plaintiff's school-reported difficulties could portend

21  _____

22  [16] While "mainstreamed," Plaintiff attended an integrated support class and received special
    "staff assistant" support.  Tr. 280.  He went to the support class when he experienced difficulty in

23  the mainstream class or when he disrupted the learning environment for others.  Tr. 280.
    Additionally, in accordance with his IEP, Plaintiff's behavior was tracked regularly, and staff
    regularly prepared checklists to help him improve his behavior.  Tr. 280.

1   work-related difficulties, and also to consider the degree to which Plaintiff's extra school

2   supports enabled him to function at school and to graduate.  *See* 2011 WL 4055665, at *6.  In

3   particular, the ALJ was required to consider any difficulties that Plaintiff experienced at school

4   in "communicating spontaneously and appropriately in the classroom," "maintaining attention

5   for extended periods in a classroom," and/or "relating to authority figures and responding

6   appropriately to correction or criticism during school."  *Id.* at *7.  Furthermore, "[t]he fact that

7   [Plaintiff] receive[d] accommodations as part of an IEP . . . may be an indication that he . . . has

8   a work-related limitation" as well.  *Id.* at *8.  Finally, SSR 11-2p required the ALJ to consider

9   that although "[t]reatment, including medications can have a positive effect on a person's ability

10  to function in a work setting," it, "may not resolve all of the functional limitations that result

11  from impairments."  *Id.* at *9.

12          Accordingly, the ALJ failed to adequately consider Plaintiff's educational records, and,

13  therefore, this reason, as stated, did not constitute a "specific, clear and convincing" reason for

14  rejecting Plaintiff's testimony.

15          In sum, the ALJ failed to provide a sufficient reason for rejecting Plaintiff's testimony.

16  On remand, the ALJ should reconsider Plaintiff's testimony, and in doing so, shall consider

17  Plaintiff's educational records pursuant to SSR 11-2p.  *See Heckler v. Edwards*, 465 U.S. 870,

18  873 n.3 (1984) (SSRs are binding on all SSA decision-makers); *Bray*, 554 F.3d at 1224 (holding

19  that SSRs "do not carry the 'force of law,' but they are binding on ALJs nonetheless").

20          Turning to Plaintiff's mother, C.B.'s testimony, the ALJ stated she found C.B.'s

21  testimony "partially persuasive," but did not specify which portions of the testimony she found

22  persuasive and which she did not.  Tr. 29.  Instead, the ALJ found, even "accept[ing C.B.'s]

23  allegations as completely true," the "level of limitation[s]" described by C.B. did "not describe

1  symptoms or limitations so severe as to preclude [Plaintiff] from working at jobs consistent with

2  the [RFC] outlined in this decision." Tr. 29.

3       Plaintiff argues the ALJ's reasons for rejecting C.B.'s testimony were not germane and

4  were not supported by substantial evidence.  He contends C.B.'s testimony is consistent with the

5  longitudinal record, noting that the medical opinions from Drs. Bowerly, Weiss, and therapist

6  Medina supported C.B.'s testimony regarding Plaintiff's limitations.  Second, Plaintiff contends

7  the ALJ erred in failing to provide a reason C.B.'s testimony was unsupported, and the ALJ

8  further misconstrued the severity of the functional limitations warranted by C.B.'s testimony.

9  Dkt. 12 at 15.

10       The Commissioner counters the ALJ was not required to articulate how she considered

11  C.B.'s testimony under the 2017 regulations. Dkt. 18 at 14.  The Commissioner then summarily

12  argues C.B.'s testimony was inconsistent with "generally unremarkable medical evidence."  Dkt.

13  18 at 15.  Finally, the Commissioner argues the ALJ properly rejected C.B.'s testimony for the

14  same reasons she rejected P's testimony.  Dkt. 18 at 15.

15       The Court rejects the Commissioner's argument the ALJ need not articulate his or her

16  consideration of the lay witness testimony.  An ALJ is required to determine RFC based upon all

17  relevant evidence of record; this includes observations made by a claimant's family, neighbors,

18  friends, or other person.  *See* 20 C.F.R §§ 404.1454(a)(1), 404.1545(a)(3).  That an ALJ can

19  disregard or reject relevant lay witness evidence for no reason is inconsistent with the

20  Commissioner's obligation to consider such evidence, and the rule the ALJ must provide some

21  rationale in order for the Court to meaningfully determine whether the ALJ's conclusions are

22  free of legal error and supported by substantial evidence.  *See, e.g., Holohan v. Massanari*, 246

23  F.3d 1195, 1208 (9th Cir. 2001).

ORDER REVERSING THE COMMISSIONER'S DECISION - 27

1    Here, the ALJ failed to provide any reasons for rejecting C.B.'s testimony and further

2    mischaracterized the severity of the adaptation, social, and concentration and persistence

3    limitations that would have been warranted by C.B.'s testimony.  Contrary to the

4    Commissioner's suggestion, in discounting C.B.'s testimony, the ALJ did *not* cite the same

5    reasons that she provided for discounting Plaintiff's testimony.  *See* Tr. 24-26; *cf.* 29.  Moreover,

6    as described above, C.B.'s testimony was not identical to Plaintiff's testimony, but was, in fact,

7    more expansive and offered the perspective of an adult close to Plaintiff regarding his behavior,

8    social interaction, focus, and ability to complete tasks and chores.  *See* Tr. 230-37, 252-59; *cf.* Tr.

9    41-49.

10    Finally, C.B.'s mother was a close family member whose testimony the ALJ was

11    specifically required to consider under SSR 11-2p.  *See* 2011 WL 4055665.  SSR 11-2p instructs

12    the ALJ to consider evidence from other sources who are not medical sources, "but who know

13    and have contact with the young adult [and] can help [the ALJ] evaluate the severity and impact

14    of a young adult's impairment(s)," including "family members, educational personnel (for

15    example, teachers and counselors), public and private social welfare agency personnel, and

16    others (for example, friends, neighbors and clergy)."  *Id.* at *5.

17    Here, C.B., Plaintiff's mother, attested to the help and reminders Plaintiff requires –

18    testimony SSR 11-2p recognizes is important in determining a young adult's RFC.  *See* Tr. 233,

19    234, 237; *see also* 2011 WL 4055665, at *8 (providing that "[i]f a young adult can function only

20    if he or she receives more help than would generally be provided to people without medical

21    impairments, we consider how well the young adult would function without the extra help," and

22    clarifying that "[t]he more extra help or support of any kind that a young adult receives because

23

of his or her impairment(s), the less independent he or she is in functioning, and the more severe
we will find the limitation to be").

C.B. also attested to Plaintiff's stress response, another consideration that SSR 11-2p
requires the ALJ to consider. *See* 2011 WL 4055665, at *10 (noting that "[s]ources familiar with
the young adult may provide insight about the effect of stress on his. . . physical or mental
functioning and what, if any, psychosocial supports or structure he . . . would need when
experiencing work-related stress").

For the above reasons, the ALJ harmfully erred in evaluating Plaintiff's and C.B.'s
testimony. On remand, the ALJ must offer adequate reasons for rejecting the testimony and
must also properly apply SSR 11-2p.

**C.      New Evidence from Plaintiff's Mother**

Following the ALJ's May 2022 decision, in July 2022, Plaintiff's mother, C.B., submitted
a "rebuttal" letter in support of Plaintiff's appeal before the Appeals Council. Tr. 12. The
Appeals Council considered the letter in denying review, concluding that "the reasons do not
provide a basis for changing the [ALJ's] decision." Tr. 2.

In the rebuttal letter, C.B. described in more detail Plaintiff's fear of leaving the house,
noting:

> [Plaintiff] has been known to absolutely refuse to leave the home when he knows he
> will be in a situation [where] he will be separated from us [immediate family], unless
> it is to walk around the block in the area he has lived over fifteen years. . . , with the
> family dog – which he does six to seven times per year, and without speaking to
> neighbors.

Tr. 12.

C.B. further emphasized Plaintiff only does chores like feeding pets on his parents'
request, never simply because he sees it needs to be done. She also clarified Plaintiff wishes he

1    could attend college, have a job and/or a relationship with a significant other, but it is too tough

2    because his anxiety provokes "public crying, shaking, and/or distracted speaking when he is

3    outside of his bubble." Tr. 12.  C.B. further elaborated Plaintiff attended therapy, but only

4    because C.B. was with him for the first few sessions, and that while some depression and anxiety

5    medications "helped slightly," Plaintiff and his family had found none that made "any significant

6    improvement to his emotional state or ease[d] the distracted behaviors." Tr. 12.  C.B. observed

7    Plaintiff is "not only incapable of interacting in any capacity without familiar people near or

8    outside the home alone meaningfully, he also struggles daily to maintain his personal care and

9    consistency of taking medication." Tr. 12.

10          Plaintiff and the Commissioner both acknowledge the Court must consider the new

11   evidence in conjunction with this appeal because it was considered by the Appeals Council. *See*

12   Dkt. 12 at 17; Dkt. 18 at 15-16.  Plaintiff argues the new evidence provides further support for

13   Plaintiff's testimony and for the challenged medical opinions.  Dkt. 12 at 17; Dkt. 19 at 9.  The

14   Commissioner summarily contends "the letter does not undermine the substantial evidence

15   underlying the ALJ's decision," equating the new evidence with C.B.'s prior testimony and

16   asserting the ALJ already properly rejected it because "it conflicted with the benign treatment

17   evidence." Dkt. 18 at 15.

18          "New material is material when it bear[s] directly and substantially on the matter in

19   dispute, and if there is a reasonabl[e] possibility that the new evidence would have changed the

20   outcome of the . . . determination." *Thomas L. v. Comm'r of Soc. Sec.*, No. 2:18-CV-00342-

21   BAT, 2018 WL 6042314, at *4 (W.D. Wash. Nov. 19, 2018) (quoting *Luna v. Astrue*, 623 F.3d

22   1032, 1033 (9th Cir. 2010)).  Here, the new evidence concerns the degree of Plaintiff's

23   adaptation, memory, and social limitations.  C.B.'s statements in the 2022 letter go beyond those

ORDER REVERSING THE COMMISSIONER'S DECISION - 30

in her original function reports, elaborating on Plaintiff's inability to leave the house without his

immediate family due to his impairments, his fear of any social interaction beyond that with his

immediate family, his inappropriate behavior and outbursts, and the impact that Plaintiff's

impairments have on his own ability to meet his hygiene needs and medication compliance.  *See*

Tr. 12; *cf.* Tr. 230-37 (C.B.'s July 2019 function report), 252-59 (C.B.'s January 2020 function

report).  Given the consistency of the statements in the new evidence with the improperly

rejected medical opinion evidence and the improperly rejected testimony from Plaintiff and his

mother, there is a "reasonable possibility" that the new evidence would have changed the

outcome of the proceedings.  *See Luna*, 623 F.3d at 1034.  Furthermore, the new evidence

constitutes the very type of evidence that SSR 11-2p requires an ALJ to consider in a case like

this one, where Plaintiff is considered a "young adult" and took special education classes and had

an IEP throughout his schooling.  *See* 2011 WL 4055665, at *1-2, 5, 8, 10.

**D.      SSA Interviewer Observation**

          Plaintiff also challenges the ALJ's failure to consider a May 30, 2019, observation from

SSA interviewer, D. Duff-Lear.  Dkt. 12 at 13 (citing Tr. 221).  During the interview, Duff-Lear

observed Plaintiff "had some difficulty staying focused and [was] distracted."  Tr. 221.  The ALJ

did not consider Duff-Lear's observation, and Plaintiff argues this constituted harmful legal

error.

          Plaintiff's interview with Duff-Lear was "intended to gather basic information about

Plaintiff's condition, not to provide testimony about [his] functional limitations," and, therefore,

the ALJ's failure to assess this evidence did not constitute harmful error.  *See Michelle M. v.*

*Comm'r of Soc. Sec.,* No. 3:19-CV-05499 TLF, 2020 WL 6074460, at *6 (W.D. Wash. Oct. 13,

ORDER REVERSING THE COMMISSIONER'S DECISION - 31

2020) (same).  Nevertheless, the ALJ will have another opportunity on remand to consider Duff-Lear's testimony at the same time the ALJ considers other lay witness testimony.

**E.    Additional Issues**

Plaintiff also argues the ALJ erred in her RFC assessment, and that the ALJ's VE hypotheticals failed to include all of Plaintiff's limitations.  Dkt. 12 at 17-18.  For the reasons above, the Court has already concluded that the ALJ erred in evaluating the medical opinion evidence and Plaintiff's and C.B.'s testimony, and that the ALJ is required to consider the new evidence from C.B.  Given that this case must be remanded on these other grounds, the ALJ must reconsider Plaintiff's RFC and reformulate the VE hypothetical on remand as well.

**F.    Remedy**

Plaintiff asks the Court to remand for an immediate award of benefits rather than for administrative proceedings.  Dkt. 12 at 18-19.

Before ordering remand for an award of benefits, the Court must conclude that the following three requirements are satisfied: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015).  Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."  *Id.* (citation omitted).

While the Court agrees with Plaintiff that the first and third requirements above are satisfied, it cannot conclude that the record has been fully developed and that further proceedings

1  would serve no useful purpose.  Accordingly, remand for further administrative proceedings is

2  the proper remedy.

3                                                    **CONCLUSION**

4          For the foregoing reasons, the Commissioner's decision is **REVERSED,** and this case is

5  **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g)

6  On remand, the ALJ must reevaluate the medical opinion evidence, Plaintiff's testimony, C.B.'s

7  testimony, evaluate the new evidence submitted to the Appeals Council, and reconsider

8  Plaintiff's RFC and the ALJ's step five findings as warranted.  In conducting the requisite

9  sequential analysis on remand, the ALJ shall consider and apply the pertinent social security

10 ruling, SSR 11-2p.  *See* 2011 WL 4055665.  Additionally, the ALJ may also consider the May

11 2019 observations from SSA interviewer, D. Duff-Lear, as warranted.

12         DATED this 27th day of February, 2024.

13

14         _____
           BRIAN A. TSUCHIDA
15         United States Magistrate Judge

16

17

18

19

20

21

22

23

ORDER REVERSING THE COMMISSIONER'S DECISION - 33